## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KELLY A. RAU,                          :
                                       :
                Plaintiff,      :
    v.                                 :     **3:16-CV-0359**
                                       :     **(JUDGE MARIANI)**
**ALLSTATE FIRE AND CASUALTY**         :
**INSURANCE COMPANY,**                 :
                                       :
                Defendant.      :

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is a Motion for Summary Judgment (Doc. 31) filed by

Defendant Allstate Fire and Casualty Insurance Company ("Allstate") in the above-

captioned action. For the reasons that follow, the Court will grant the Motion.

### II. PROCEDURAL HISTORY

The above-captioned action arises out of events related to a prior action, also

entitled *Rau v. Allstate Fire and Casualty Insurance Company*, before this Court (*see* 3:14-

cv-00479-RDM). For purposes of clarity, the Court will include the procedural history of the

first action as well as the present action.

Prior to the commencement of the current action, Plaintiff Kelly Rau filed an action

against Allstate in the Court of Common Pleas of Lackawanna County on February 27,

2014, alleging an underinsured motorist claim ("UIM claim") due to Allstate's "failure and

refusal to pay the Plaintiff underinsured motorist benefits" arising out of an automobile

accident which occurred on December 1, 2011. (Compl., Doc.1-2, 3:14-cv-0479). On March 13, 2014, Allstate removed Plaintiff's UIM action to this Court. (Doc. 1, 3:14-cv-0479).

By letter dated May 1, 2015, Plaintiff's counsel informed the Court that a discovery dispute had arisen as to whether Plaintiff was permitted to depose Allstate's claims adjuster. (Doc. 24, 3:14-cv-0479). Allstate objected to the deposition arguing that, because Plaintiff's Complaint only alleged a claim for UIM benefits and not for bad faith, the claim adjuster's testimony as to how she handled the claim was irrelevant, in addition to possibly constituting protected work product. (Doc. 25, at 3-4, 3:14-cv-0479). The Court ordered that Plaintiff's deposition of Allstate's claims adjuster could proceed to the "extent that it concern[ed] the factual details of Allstate's investigation and evaluation of Ms. Rau's claims, and [did] not seek disclosure of work product in anticipation of litigation or other privileged materials." (Doc. 28, 3:14-cv-0479).

After the Court was notified by Mediator William G. Schwab, Esq., that mediation in the UIM matter was unsuccessful (Doc. 33, 3:14-cv-0479), a telephonic scheduling conference was conducted on October 23, 2015, for purposes of scheduling the UIM matter for trial (Doc. 34, 3:14-cv-0479). During the scheduling conference, Plaintiff's counsel informed the Court that Plaintiff intended to file a bad faith claim against Allstate. (Doc. 36, 3:14-cv-0479). As a result, the Court deferred setting a trial date in the UIM matter. (Id.). However, when Plaintiff failed to file a bad faith claim within a reasonable time, the Court staff contacted Plaintiff's counsel to inquire as to the status of the claim. Plaintiff's counsel

2

then filed a letter on January 11, 2016 indicating that "Plaintiff [would] file a bad faith claim within ten (10) days." (Docs. 38, 39, 3:14-cv-0479). On January 27, 2016, it appearing that Plaintiff had not filed a bad faith claim, the Court issued an order instructing Plaintiff that the deadline for amending her Complaint to include a claim for bad faith was February 1, 2016. (Doc. 39, 3:14-cv-0479). The Court further ordered that should no bad faith claim be filed on or before February 1, 2016, Plaintiff's UIM claim would go to trial on July 5, 2016. (Id.).

Plaintiff's counsel notified the Court by letter dated February 2, 2016, that a bad faith action was filed in the Court of Common Pleas of Lackawanna County on January 21, 2016. (Doc. 40, 3:14-cv-0479). On February 29, 2016, Allstate removed the bad faith claim to this Court. (Doc. 1, 3:16-cv-0359). Thereafter, a conference call was held on March 7, 2016, to determine the manner in which the pending UIM claim should be addressed in light of Plaintiff's new claim of bad faith concerning Allstate's response to Plaintiff's UIM claim. (Doc. 44, 3:14-cv-0479). Upon agreement of counsel, the Court stayed the bad faith case until final judgment was entered in the UIM matter (Doc. 6, 3:16-cv-0359).

On June 13, 2016, Plaintiff's counsel filed a letter informing the Court that the parties had agreed to resolve the UIM matter by binding arbitration. (Doc. 48, 3:14-cv-0479). The Court thereafter issued an order dismissing the UIM case on June 14, 2016. (Doc. 49, 3:14-cv-0479).

On August 25, 2016, Plaintiff's counsel informed the Court by letter of Plaintiff's request to reopen the present bad faith action. (Doc. 7, 3:16-cv-0359). The Court issued an

order on August 26, 2016, lifting the stay in the bad faith case and reopening the case. (Doc. 8, 3:16-cv-0359).

Following the completion of discovery, on January 29, 2018, Allstate filed a Motion for Summary Judgment, Brief in Support of the Motion, and a Statement of Material Facts. (Docs. 31, 32, 33, 3:16-cv-0359). Plaintiff thereafter filed a Brief in Opposition to the Motion for Summary Judgment as well as a Response to Defendant's Statement of Material Facts and a Counter Statement of Facts. (Docs. 39, 40, 3:16-cv-0359). On February 28, 2018, Defendant filed a Motion to Strike Plaintiff's Counter Statement of Facts and a Brief in Support of the Motion. (Docs. 46, 47, 3:16-cv-0359). Plaintiff filed a Brief in Opposition to the Motion to Strike. (Doc. 51, 3:16-cv-0359).

## III. STATEMENT OF UNDISPUTED FACTS

Defendant Allstate has submitted a Statement of Material Facts (Doc. 33) as to which it submits there is no genuine issue or dispute for trial. Plaintiff Rau responded to Allstate's statement of material facts (Doc. 40). In addition, Plaintiff filed her own counterstatement of material facts (Doc. 40), although, as properly noted by Allstate (*see* Docs. 46, 47), such a counterstatement of material facts is not contemplated by the language of Middle District of Pennsylvania Local Rule 56.1.[1]

---

[1] In response to Defendant's Statement of Undisputed Facts (Doc. 33), Plaintiff filed a "Response to Defendant's Statement of Undisputed Facts and Counterstatement of Facts" (Doc. 40). Plaintiff's submission responds to each of Defendant's statements, but then includes a "by way of further response" clause wherein Plaintiff sets forth an additional 289 paragraphs which she contends are also undisputed facts. As a result, Defendant filed a Motion to Strike Plaintiff's Counterstatement of Facts (Doc. 46) arguing that the Counterstatement "is unauthorized and frustrates the purpose of the summary judgment rule" (Doc.

4

Except where noted, the following facts are undisputed:

On December 1, 2011, Rau was involved in an automobile accident. (*See* Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 1). Following the accident, Rau complained of and sought treatment for back pain, shoulder pain, neck pain and headaches. (*Id.* at ¶ 2).[2] Rau missed three-days of work and used 136 hours of sick time for reasons related to the accident. (*Id.* at ¶ 11). On January 12, 2012, an MRI revealed a variety of degenerative changes in Rau's lumbar spine as well as a "slight annular bulge" at the L4-L5 level "resulting in minimal thecal sac impingement without nerve impingement," and "a small posterior annular fissure." (*Id.* at ¶ 3). As a result of her injuries, Rau's treatment consisted of physical, aqua, and massage therapies as well as pain medication, a home TENS unit

---

47, at 2). The Court has considered Defendant's Motion to Strike (Doc. 46) and Plaintiff's Opposition thereto (Doc. 51). Although the Court has examined the additional, and numerous, statements of fact set forth in Plaintiff's Counterstatement, those purportedly undisputed material facts consist largely of a recitation of additional factual assertions, outside the scope of Defendant's statement of material facts, which is not provided for in either the Federal Rules of Civil Procedure or the Local Rules of the Middle District of Pennsylvania. However, rather than excising the numerous offending portions of Plaintiff's counterstatement of facts, the Court will deny the motion to strike and instead will assign those portions no evidentiary value.

[2] Throughout Plaintiff's response to Defendant's Statement of Material Facts, Plaintiff provides disingenuous and unresponsive denials to Defendant's statements of fact. Plaintiff repeatedly denies certain factual statements, but bases those denials on factual assertions or evidence of record not directly related to the statement of fact set forth by Defendant. For example, in paragraph 3 of Defendant's statement of material facts, the Defendant cites, and quotes, to Dr. Shaer's findings upon review of Rau's MRI. Plaintiff "denie[s]" this statement of fact by setting forth the findings of *other* doctors. Thus, Plaintiff is not actually disputing Defendant's statement of fact with respect to Dr. Shaer's conclusions.

With respect to Local Rule 56.1 as it relates to an opposing party's answer to the statement of material facts, "[w]here an opposing party fails to object in its answer, those facts in the moving party's statement are considered admitted." *Weitzner v. Sanofi Pasteur Inc.*, -- F.3d --, 2018 WL 6175580, *7 (3d Cir. 2018). As a result, the Court has deemed part, or all, of the following paragraphs in Defendant's Statement of Material Facts admitted despite Plaintiff's statements that they are "denied": 2; 3; 5; 6; 14; 15; 16; 17; 20; 22; 23; 24; 27; 31; 34; 36; 38; 39; 41; 46; 54; 58; 61; 62; and 71.

and epidural and facet injections. (*Id.* at ¶ 5). Allstate paid for these treatments as well as

other medical expenses under Rau's $100,000 med pay coverage until it arranged for a

statutorily permitted peer review in October 2013. (*Id.* at ¶¶ 13-14). An entry in Allstate's

Claim Diary, dated December 23, 2013, states that:

> Per the Peer review, the treatment provided by Dr. Oleski with office visits and
> medications has been reasonable and necessary. The recommendation for lab
> testing is reasonable and necessary. The initial referral for massage therapy
> and physical therapy is reasonable and necessary as are the treatments with
> epidurals and facet injections. Ongoing treatment is medically necessary and
> reasonable by Dr. Oleski with the use of a TENS unit and medications
> management, however physical therapy is not reasonable or necessary. A 4
> weeks aquatics therapy program would be reasonable and necessary following
> an evaluation and then the patient would continue [with an] independent
> program. As of 11/11/13, when Dr. Oleski last saw the patient, the patient would
> have reached [maximum medical improvement] [(MMI)] from all of the
> treatment other than a possible 4 week course of aquatics therapy. As per the
> review, treatments after 6/11/13 are not deemed reasonable or necessary. Bills
> have been processed in accordance to the Peer Review.

(Doc. 33, Ex. 6, at ALL 1423; *see* Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 15, Pltf.'s

Statement of Mat. Facts, Doc.40, at ¶ 15). It is undisputed that Plaintiff did not seek

reconsideration of the peer review conclusions. (Def.'s Statement of Mat. Facts, Doc. 33, at

¶ 16). However, Plaintiff asserts that she did challenge the findings of the peer review.

(Pltf.'s Statement of Mat. Facts, Doc.40, at ¶ 16).

By letter dated March 12, 2013, Plaintiff's counsel, Susan Luckenbill, Esq., placed

Allstate on notice of the potential filing of a UIM claim on behalf of Rau. (Def.'s Statement of

Mat. Facts, Doc. 33, at ¶ 7). In response, Allstate assigned Bethany Johnson, a claims

adjuster, to handle the potential UIM claim. (*Id.* at ¶ 8). On March 29, 2013, Plaintiff's

6

counsel told Johnson that it was possible Rau would be adequately compensated by the tortfeasor's $100,000 bodily injury coverage. (*Id.* at ¶¶ 9-10). However, Plaintiff's counsel later informed Allstate by letter dated January 2, 2014, that the "[tortfeasor's] carrier ha[d] offered $95,000 of a $100,000.00 policy limit as full and final settlement of the third party claim." (Doc. 33, Ex. 8, at ALL 1375; *see* Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 17, Pltf.'s Statement of Mat. Facts, Doc.40, at ¶ 17). Thereafter, Allstate granted consent to settle the third party claim and waived its subrogation rights. (Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 18).

On January 16, 2014, Plaintiff's counsel forwarded medical records along with a letter demanding that Defendant tender the full $200,000 UIM policy limit. (*Id.* at ¶ 19). The demand letter submitted by Plaintiff's counsel contained all the records and information she believed justified her demand for the policy limits. (*Id.* at ¶ 20). Following her receipt of the demand package, Johnson testified during her deposition that although "it's not specifically documented" she "would have" reviewed the evaluation on January 23, 2014, when she ran Colossus, a computer software program that calculates settlement values. (Doc. 33, Ex. 10, at 120:10-14; *see* Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 22, Pltf.'s Statement of Mat. Facts, Doc. 40, at ¶ 22). Johnson evaluated the claim based on the information in her possession and valued the case at a gross value of $110,000 to $115,000. (Doc. 33, Ex. 10, at 130:6-131:3, Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 23). Because Allstate was entitled to a $100,000 credit for the full $100,000 coverage available to Rau from the

tortfeasor's policy, Johnson orally conveyed an offer of $10,000 to settle the UIM claim to Attorney Luckenbill's associate, Melissa Foley, Esq., on January 28, 2014, and later confirmed that offer in writing. (Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 24). Attorney Luckenbill rejected Allstate's offer and reiterated her $200,000 demand. (*Id.* at ¶ 25). At no time did Attorney Luckenbill offer to accept anything less than $200,000, nor did Rau consider accepting an amount less than $200,000 to settle the claim because, as she testified in her deposition, an offer was never made for a lesser amount. (Doc. 33, Ex. 4, at 15:8-17:2, Def.'s Statement of Mat. Facts, Doc. 33, at ¶¶ 26-27).

In cases where parties disagree about the value of a claim, Plaintiff's Allstate policy provides in part that:

> If the insured person and we do not agree on that person's right to receive damages or on the amount, then upon mutual consent, the disagreement will be settled by arbitration. Unless you and we agree otherwise, arbitration will take place in the county in which your address shown on the Policy Declarations is located. If the insured person and we do not agree to arbitrate, then the disagreement will be resolved in a court of competent jurisdiction.

(Doc. 33, Ex. 12, at ALL 0241).

Plaintiff's counsel did not request arbitration, and filed a lawsuit seeking UIM benefits. (*See* Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 29). Plaintiff's Complaint alleged that Allstate had improperly handled her claim, among other things, by failing to thoroughly investigate the claim. (*Id.* at ¶ 30). After receiving the complaint, Allstate retained Timothy Foley, Esq., to serve as counsel to defend against Plaintiff's lawsuit. (*Id.* at ¶ 31).

8

Discovery in the UIM action proceeded in accordance with the Federal Rules of Civil Procedure. (*Id.* at ¶ 33). Attorney Timothy Foley gathered additional records from Plaintiff's counsel reflecting her client's additional treatments and subpoenaed records directly from several of Plaintiff's medical providers. (*Id.* at ¶ 35). However, as a result of Attorney Luckenbill's refusal to provide authorization for Attorney Timothy Foley to obtain Plaintiff's medical records, Allstate subpoenaed medical records directly from Rau's medical providers. (*Id.* at ¶ 36).

Attorney Timothy Foley also took Plaintiff's deposition and obtained a review of Plaintiff's MRI films by Dr. Andrew Shaer and an independent medical examination ("IME") by Dr. Michael Banas. (Def.'s Statement of Mat. Facts, Doc. 33, at ¶¶ 37, 39-40). The IME concluded that Plaintiff's right knee contusion, cervical strain, thoracic strain, and lumbar strain related to the motor vehicle accident had resolved. (*See* Doc. 33, Ex. 18, at ALL 0706). The IME also noted the presence of an annular tear, and Dr. Banas requested additional records to evaluate that injury. (Doc. 33, Ex. 18, at ALL 0706-708; *see also*, Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 41). After reviewing additional records supplied by Attorney Timothy Foley, Dr. Banas issued a supplemental report. (Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 42). Dr. Banas related the annular tear to the accident and recommended that she consider "non-operative management." (*See* Doc. 33, Ex. 19, at ALL 0658; *see also*, Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 43). Further, Dr. Banas recommended that Plaintiff continue to treat with a program of pain medication, a regimen of home physical therapy, and

monitoring of the condition by Plaintiff's treating physicians. (Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 44, Pltf.'s Statement of Mat. Facts, Doc. 40, at ¶ 44).

As explained in the procedural history of this memorandum opinion, *supra*, the parties engaged in mediation on October 19, 2015, which did not result in a settlement. The Court then held a telephone conference on October 23, 2015, to schedule the UIM case for trial, but the conference ended when Plaintiff's counsel informed the Court of her intention to file a bad faith claim against Allstate. (Def.'s Statement of Mat. Facts, Doc. 33, at ¶¶ 52-54). Attorney Luckenbill then filed the bad faith claim that is the subject of the present memorandum opinion, against Allstate in the Court of Common Pleas of Lackawanna County on January 21, 2016. (*Id*. at ¶ 56). On January 27, 2016, the Court, having not been informed of the initiation of proceedings in the Court of Common Pleas, issued an order requiring Plaintiff to file a bad faith claim by February 1, 2016, or go to trial on the UIM claim alone on July 5, 2016. (*Id*. at ¶ 55). Allstate then removed the state court bad faith action and, by agreement of the parties reached during a conference call with the Court on March 7, 2016, the Court ordered proceedings on the bad faith case stayed until final judgment was entered in the UIM case. (*Id*. at ¶ 57).

In January 2016, Johnson received medical records and other documents from Attorney Timothy Foley. (*Id*. at ¶ 58). On January 19, 2016, Johnson wrote in Allstate's Claim Diary: "I will wait to receive the surgical records and treatment outcome records prior to re-evaluating the case as this new information changes my initial value." (Doc. 33, Ex. 6, at ALL

1441; *see* Def.'s Statement of Mat. Facts, Doc. 33, at ¶¶ 58-59). However, after having not

received surgical records, Johnson wrote on June 3, 2016, in the Allstate Claim Diary:

> I discussed this case with CPL as we are approaching a trial date being set. Since our last evaluation, we have obtained [insured's] [statement under oath] [(SUO)], a film review, and an IME. Ins[ure]d makes a likeable witness, although some of her complaints don't seem to correlate with her sporadic treatment. Both the film review and the IME supported that she did not suffer a traumatic injury in this loss and she should have recovered fully within 6 months. However, we have [received] [a] surgical recommendation that [insured] has declined at this time, which adds some romance to this case. [Require] additional authority to attempt to negotiate this case, up to $50,000.

(Doc. 33, Ex. 6, at ALL 1445). Although Rau was identified as a candidate for spinal fusion

surgery and had not had, or scheduled, surgery as of June, 2016, the time of Johnson's

evaluation and the Colossus Report, Johnson adjusted her valuation and arrived at a gross

valuation of $150,000, which resulted in a net valuation of $50,000 after the credit from the

tortfeasor's $100,000 bodily injury coverage was applied to the claim. (*Id.*, Def.'s Statement

of Mat. Facts, Doc. 33, at ¶¶ 6, 61). Johnson then authorized Attorney Timothy Foley to

arrange for high/low arbitration with parameters of $150,000/$50,000. (Def.'s Statement of

Mat. Facts, Doc. 33, at ¶ 62). Attorney Luckenbill counter-proposed arbitration with

parameters of $200,000/$10,000 and Allstate accepted those terms. (*Id.* at ¶ 67). The

parties further agreed on Attorney Thomas Helbig as the sole arbitrator, and the arbitration

was held on July 18, 2016. (*Id.* at ¶ 68).

At the conclusion of the UIM arbitration hearings, Attorney Timothy Foley sent a

letter addressed to Attorney Helbig wherein he sought a reduction of any claimed future

11

medical expense, by the amount of Plaintiff's remaining first party med pay benefits and by any benefits available to her under her employer sponsored private health insurance. (Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 71). Attorney Helbig issued an award in the gross amount of $306,345, to be molded to account for any applicable credits or agreement. (Id. at ¶ 74). Attorney Helbig granted Attorney Timothy Foley's request to allow a credit for the remaining amounts of Rau's Allstate first party med pay coverage, but did not allow any credit for her private health insurance. (Id. at ¶ 75). After applying the $100,000 credit for the tortfeasor coverage and $45,558.22 for the remaining Allstate med pay coverage, the net award due to Rau under her UIM coverage was $160,786.78. (Id. at ¶ 76). This net award was below her lowest demand by $39,013.22. (Id.). The award included $171,801 to cover the projected cost of future spinal fusion surgery as well as $125,000 in non-economic damages for pain and suffering. (Id. at ¶¶ 77-78).

Allstate paid the award to Ms. Rau. (Id. at ¶ 79). Thereafter, the present bad faith action was re-opened by this Court on August 26, 2016.

## IV.    STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of

12

showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not

lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## V. ANALYSIS

Plaintiff argues that Defendant acted in bad faith by failing to offer her the full policy

limit of her UIM benefits. The Pennsylvania legislature has created a statutory remedy for an

insurer's bad faith conduct, which reads as follows:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371."The standard for bad faith claims under § 8371 is set forth

in *Terletsky v. Prudential Property & Cas. Ins. Co.*, 437 Pa. Super. 108, 649 A.2d 680, 688

(1994), *appeal denied*, 540 Pa. 641, 659 A.2d 560 (1995)." *Klinger v. State Farm Mut. Auto.*

*Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997). *Terletsky* defined the term "bad faith" as follows:

In the insurance context, the term bad faith has acquired a particular meaning:
> *Insurance.* "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a

14

> claim, such conduct imports a dishonest purpose and means a breach of
> a known duty (i.e., good faith and fair dealing), through some motive of
> self-interest or ill will; mere negligence or ill judgment is not bad faith.

*Terletsky*, 649 A.2d at 688 (quoting Black's Law Dictionary 139 (6th ed. 1990)).

"[T]o recover under a claim of bad faith, the plaintiff must show that the defendant did

not have a reasonable basis for denying benefits under the policy and that defendant knew or

recklessly disregarded its lack of reasonable basis in denying the claim." *Id.* "In a bad faith

case, summary judgment is appropriate when there is no clear and convincing evidence that

the insurer's conduct was unreasonable and that it knew or recklessly disregarded its lack of

a reasonable basis in denying the claim." *Bostick v. ITT Hartford Grp., Inc.*, 56 F.Supp.2d

580, 587 (E.D. Pa. 1999).

As evidence of Allstate's alleged bad faith, Plaintiff primarily relies on two assertions:

(1) that Allstate's failed to provide a reasonable basis for its valuation of her claim, and (2)

that Allstate refused to negotiate with her in good faith. However, as evidenced by the

undisputed statement of facts, *supra*, no triable disputes of fact exist to support either of

these assertions.

Here, Plaintiff has not come forward with any evidence to demonstrate a genuine

factual dispute that Allstate did not have a reasonable basis for its valuation of Plaintiff's

UIM claim. Contrary to Plaintiff's assertions, the medical reports from Plaintiff's doctors and

Allstate's medical experts indicated that further medical treatments were unnecessary

because most of Plaintiff's injuries resolved because of her medical care. (*See* Doc. 33, Ex.

6, at ALL 1423; *see also* Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 15). For instance, in light of Plaintiff's physical, aqua, and massage therapies as well as epidural and facet injections, the peer review concluded that Plaintiff reached the maximum medical improvement from these various treatments. (Def.'s Statement of Mat. Facts, Doc. 33, at ¶¶ 5, 15). Further, the IME indicated that Plaintiff recovered from her right knee contusion, cervical strain, thoracic strain, and lumbar strain. (*Id*. at ¶ 41).

In addition, the record reflects that Allstate's valuation of Plaintiff's claim below the policy limit was, at least in part, premised on the lack of surgical records to demonstrate that Plaintiff had already undergone, or had any immediate intention to undergo, spinal fusion surgery. The record evidence shows that Plaintiff suffered an annular tear as a result of the automobile accident, that she was a candidate for spinal fusion surgery, and that Allstate was made aware that Plaintiff wished to proceed with spinal fusion surgery. (Doc. 33, Ex. 6, at ALL 1441; *see* Def.'s Statement of Mat. Facts, Doc. 33, at ¶¶ 6, 43, 58-59). However, it is undisputed that Plaintiff did not have this surgery or notify Allstate of any specific plans to undergo the surgery. Nor at any time prior to the arbitration proceedings, in which Plaintiff was awarded the net sum of $160,786.78, did Plaintiff undergo spinal fusion surgery. (*See* Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 76).

Even drawing all inferences in the light most favorable to Rau, the plaintiff has not come forward with specific facts to rebut Allstate's evidence that its valuation based on the medical reports and medical evidence of record was somehow unreasonable. Instead, the

record evidence demonstrates that Allstate has come forward with sufficient evidence to establish an absence of any genuine dispute of material fact as to its conduct in pre-arbitration dealings.

Plaintiff has also not set forth any evidence to create a genuine dispute of fact for trial as to whether Defendant conducted its investigation, evaluation, or handling of Plaintiff's claim in bad faith, *i.e.*, that it knowingly engaged in unreasonable actions evincing bad faith. "[T]he essence of a bad faith claim" is "the unreasonable and intentional (or reckless) denial of benefits." *UPMC Health Sys. V. Metropolitan Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004). "[A]n insurer may defeat a claim of bad faith by showing that it had a reasonable basis for its actions." *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 522 (3d Cir. 2012). After evaluating the peer review and IME as well as other medical evidence, Allstate concluded that it was reasonable to determine that Plaintiff's claim had a gross value of $110,000 and $115,000. (*See* Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 23). "[B]ad faith is not present merely because an insurer makes a low but reasonable estimate of an insured's damages." *Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 784 (Pa. Super. Ct. 2009) (distinguishing *Hollock v. Erie Ins. Exch.*, 842 A.2d 409 (Pa. Super. Ct. 2004)). Further, Allstate's participation in binding arbitration as well as its high/low parameters of $150,000/50,000 (*see* Def.'s Statement of Mat. Facts, Doc. 33, at ¶¶ 62, 68), which would have guaranteed Plaintiff a minimum award of $50,000, is additional evidence of the absence of bad faith.

Contrary to Plaintiff's allegation that Allstate failed to negotiate in good faith and reevaluate her claim, the record shows that Plaintiff refused to accept any settlement below the full policy value of her UIM benefits. It is undisputed that at no time did Attorney Luckenbill offer to accept anything less than $200,000, nor did Rau consider accepting an amount less than $200,000 to settle the claim. (Doc. 33, Ex. 4, at 15:8-17:2, Def.'s Statement of Mat. Facts, Doc. 33, at ¶¶ 26-27). Allstate was not required to tender the full policy value merely because of Plaintiff's demand. Rather, Allstate had a "duty to investigate [the] claim fairly and objectively." *Employers Mut. Cas. Co. v. Loos*, 476 F.Supp.2d 478, 495 (W.D. Pa. 2007); *see also, Condio v. Erie Ins. Exch.,* 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006) ("in the absence of evidence of a dishonest purpose or ill-will, it is not bad faith [for an insurer] to take a stand with a reasonable basis or to aggressively investigate and protect its interests in the normal course of litigation") (internal citations and quotation marks omitted). Here, Plaintiff has not come forward with any evidence to create a genuine dispute of fact as to whether Allstate acted in bad faith when it investigated Plaintiff's claim and make a valuation which the record reflects was supported by a reasonable factual basis. The fact that Plaintiff made a demand for the full policy limits, and Allstate refused to offer that amount, is not in itself evidence of bad faith or that Allstate failed to fairly evaluate Rau's claim.

Finally, there is evidence in the record that Allstate reevaluated Plaintiff's claim and considered altering its initial valuation. (*See e.g.,* Doc. 33, Ex. 6, at ALL 1441; Def.'s

Statement of Mat. Facts, Doc. 33, at ¶¶ 58-59). When Allstate learned that Plaintiff wished to move forward with surgery, Bethany Johnson reconsidered her initial valuation in light of this information. (*See* Def.'s Statement of Mat. Facts, Doc. 33, at ¶ 59). As trial approached, the record shows that Johnson sought authorization from her superiors to increase the value of Plaintiff's UIM claim to $50,000. (*See* Doc. 33, Ex. 6, at ALL 1441; Def.'s Statement of Mat. Facts, Doc. 33, at ¶¶ 58-59).

For the aforementioned reasons, Plaintiff has not set forth evidence to demonstrate that a genuine dispute of material fact exists with respect to Allstate's assertion and supporting evidence that it negotiated in good faith.

Thus, based on the above discussion, "[t]he underlying facts involve nothing more than a normal dispute between an insured and insurer over the value of an UIM claim." *Johnson*, 987 A.2d at 785.

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 31) will be granted. A separate Order follows.

Robert D. Mariani
United States District Judge

19